1  JOHN S. LEONARDO
   United States Attorney
2  District of Arizona

3  JENNIFER E. GREEN
   Arizona State Bar No. 018792
   jennifer.green@usdoj.gov
   SHARON K. SEXTON
4  Arizona State Bar No. 012359
   sharon.sexton@usdoj.gov
5  DYANNE C. GREER
   Arizona State Bar No. 010893
   dyanne.greer@usdoj.gov
6  Assistant U.S. Attorneys
   Two Renaissance Square
7  40 N. Central Avenue, Suite 1200
   Phoenix, Arizona 85004-4408
   Telephone (602) 514-7500

8

9                 UNITED STATES DISTRICT COURT

10                     DISTRICT OF ARIZONA

11  United States of America,

12              Plaintiff,                CR-12-08195-PCT-PGR

13         v.                            **PLEA AGREEMENT**

14  Matthew Lee Smith,

15              Defendant.

16

17         Plaintiff, United States of America, and the defendant, MATTHEW LEE SMITH, hereby

18  agree to dispose of this matter on the following terms and conditions:

19  **1.    PLEA**

20         The defendant will plead guilty to the following counts:  Second-Degree Murder, the

21  lesser-included offense of Count 1:  First-Degree Murder in the Superseding Indictment, in

22  violation of Title 18 United States Code (U.S.C.) §§ 1111, 1153, and 3559(f)(1), a Class A

23  felony offense; Counts of the Superseding Indictment charging the defendant with Child Abuse,

24  in violation of Title 18 U.S.C. §§ 1153, 3559(f)(3), and Arizona Revised Statutes (A.R.S.) §§

25  13-3623(A)(1) and 13-705, a Class A felony offense; and Count 12 of the Superseding

26  Indictment charging the defendant with Assault Resulting in Serious Bodily Injury, in violation

27  of Title 18 U.S.C. §§ 113(a)(6), 1153, and 3559(f)(3), a Class A felony offense.

28



## 2.    MAXIMUM PENALTIES

      a.     A violation of Title 18 U.S.C. §§ 1111 and 3559(f)(1), Second-Degree Murder, is punishable by a maximum fine of $250,000, a minimum term of 30 years' imprisonment and a maximum term of life imprisonment, or both, and a term of supervised release of five years. A violation of A.R.S. § 13-3623(A)(1) and Title 18 U.S.C. § 3559(f)(3), Child Abuse, is punishable by a maximum fine of $250,000, a minimum term of 10 years' imprisonment and a maximum term of life imprisonment, or both, and a term of supervised release of five years. A violation of Title 18 U.S.C. §§ 113(a)(6) and 3559(f)(3), Assault Resulting in Serious Bodily Injury, is punishable by a maximum fine of $250,000, a minimum term of 10 years' imprisonment and a maximum term of life imprisonment, or both, and a term of supervised release of five years. Pursuant to 18 U.S.C. § 3583(e)(3), each supervised release violation may carry a maximum penalty of five years' imprisonment.

      b.     According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

      (1)     make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

      (2)     pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

      (3)     serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

      (4)     pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013(a)(2)(A).

      c.     The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crimes of conviction, unless there are stipulations to the contrary that the Court accepts.

3. **AGREEMENTS REGARDING SENTENCING**

      a.    <u>Stipulation.</u> Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that the court sentence the defendant to no fewer than 30 years and no greater than 35 years in prison.

      b.    <u>Restitution.</u> Pursuant to 18 U.S.C. § 3663 and/or 3663A, the defendant specifically agrees to make restitution to the family of Jane Doe 1, to Jane Doe 2 or her family or guardian, to John Doe 1 or his family or guardian, and to any insurance company, hospital, or other lawful victim, in an amount to be determined by the Court at the time of sentencing but in no event more than $5,000,000. This restitution order shall include restitution, if ordered, for dismissed counts and uncharged conduct.

      c.    <u>Acceptance of Responsibility.</u>  If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will recommend an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

4.     **AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

      a.    Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States shall dismiss the following charges: Counts 2, 4-11 at the time of sentencing.

      b.    This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

5.     **COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

      If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

1    If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or
2    reversed at any time, this agreement shall be null and void, the United States shall be free to
3    prosecute the defendant for all crimes of which it then has knowledge and any charges that have
4    been dismissed because of this plea agreement shall automatically be reinstated.  In such event,
5    the defendant waives any and all objections, motions, and defenses based upon the Statute of
6    Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or
7    proceedings.  The defendant understands that any statements made at the time of the defendant's
8    change of plea or sentencing may be used against the defendant in any subsequent hearing, trial,
9    or proceeding subject to the limitations of Fed. R. Evid. 410.

10   **6.    WAIVER OF DEFENSES AND APPEAL RIGHTS**

11   The defendant waives (1) any and all motions, defenses, probable cause determinations,
12   and objections that the defendant could assert to the indictment or information; and (2) any right
13   to file an appeal, any collateral attack, and any other writ or motion that challenges the
14   conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or
15   any aspect of the defendant's sentence, including the manner in which the sentence is
16   determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing
17   appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file
18   a motion for modification of sentence, including under Title 18, U.S.C., § 3582(c).  This waiver
19   shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might
20   file challenging the conviction, order of restitution or forfeiture, or sentence in this case.

21   **7.    DISCLOSURE OF INFORMATION**

22   a.    The United States retains the unrestricted right to provide information and make
23   any and all statements it deems appropriate to the U.S. Probation Office and to the Court in
24   connection with the case.

25   b.    Any information, statements, documents, and evidence that the defendant provides
26   to the United States pursuant to this agreement may be used against the defendant at any time.

27

28

4

c.    The defendant shall cooperate fully with the U.S. Probation Office.  Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

(1)    criminal convictions, history of drug abuse, and mental illness; and

(2)    financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

## 8.    FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS

Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

## 9.    ELEMENTS

### Second-Degree Murder

On or between July 8, 2012 and July 11, 2012, in the District of Arizona:

1.  Within the confines of the Fort Mojave Indian Reservation, Indian Country;

2.  The defendant, with malice aforethought, unlawfully killed Jane Doe 1, a child under the age of 18; and

3.  The defendant was an Indian during the time of the offense.  Specifically, the defendant had descendant status (i.e. Indian blood) as an Indian from a federally recognized tribe, and the defendant was recognized as an Indian by a tribal government or the federal government.

To kill with malice aforethought means to kill either deliberately and intentionally or recklessly with extreme disregard for human life.

1                                  **Child Abuse**

2     On or between July 8, 2012 and July 11, 2012, in the District of Arizona:

3         1.      Within the confines of the Fort Mojave Indian Reservation, Indian Country;

4         2.      The defendant had care or custody of Jane Doe 2, a child under the age of 18;

5         3.      The defendant intentionally or knowingly caused or permitted Jane Doe 2's person

6                 or health to be injured, or caused or permitted Jane Doe 2 to be placed in a

7                 situation where her person or health was endangered;

8         4.      The defendant acted under circumstances likely to produce death or serious

9                 physical injury; and

10        5.      The defendant was an Indian during the time of the offense. Specifically, the

11                defendant had descendant status (i.e. Indian blood) as an Indian from a federally

12                recognized tribe, and the defendant was recognized as an Indian by a tribal

13                government or the federal government.

14

15                   **Assault Resulting in Serious Bodily Injury**

16     On or between July 8, 2012 and July 11, 2012, in the District of Arizona:

17         1.      Within the confines of the Fort Mojave Indian Reservation, Indian Country;

18         2.      The defendant intentionally, knowingly, or recklessly struck or wounded John Doe

19                 1, a child under the age of 18;

20         3.      As a result, John Doe 1 suffered serious bodily injury; and

21         4.      The defendant was an Indian during the time of the offense. Specifically, the

22                defendant had descendant status (i.e. Indian blood) as an Indian from a federally

23                recognized tribe, and the defendant was recognized as an Indian by a tribal

24                government or the federal government.

25 **10.**    **FACTUAL BASIS**

26     The defendant admits that the following facts are true and that if this matter were to

27 proceed to trial the United States could prove the following facts beyond a reasonable doubt:

28

1   On and between July 8 to July 11, 2012, the defendant and his wife Deirdre Kormes lived

2   in tribal housing on the Fort Mojave Indian reservation in Mohave Valley, Arizona, within the

3   District of Arizona with her two biological daughters, two-year old Jane Doe 1 and five-year old

4   Jane Doe 2.   The defendant had several biological children, including four-year old John Doe

5   1, who also lived with them.

6   On or about July 9, 2012, the defendant was in their tribal residence and was angry with

7   Jane Doe 2 because she urinated on herself. He then disciplined her by hitting her with a sandal.

8   He took her into the bathroom and struck her with his hand to her head and face several times.

9   The defendant watched Jane Doe 2 fall back into the shower, and her eyes rolled back into her

10   head. As a result of the beating, Jane Doe 2 appeared "comatose," and had blood coming out

11   of her nose and mouth. The defendant locked her in the bathroom with no food or water where

12   she remained for two days until Ms. Kormes discovered her there on July 11, 2012. The

13   defendant also taped Jane Doe 2's legs together.

14   On July 10, 2012, the defendant became angry with Jane Doe 1. He struck Jane Doe 1

15   in the face and punched her in the stomach. As a result of the beating, her eyes rolled back into

16   her head and she fell backwards. The defendant believed he had killed her and described her as

17   "limp." The defendant made attempts to revive her, which were unsuccessful. He took her to

18   the laundry room and put a blanket over her and left her there where she was ultimately

19   discovered by officers on July 11, 2012. When officers found Jane Doe 1, she had been dead

20   for some period of time.

21   During the time period when the defendant was hurting Jane Doe 1 and Jane Doe 2, he

22   moved the couch in front of the front door, creating a barricade so no one inside the house could

23   leave easily.

24   On July 11, 2012, Ms. Kormes discovered Jane Doe 1 in the laundry room, deceased. At

25   some time thereafter, Ms. Kormes broke into the bathroom, where Jane Doe 2 had been kept by

26   the defendant. Ms. Kormes then found Jane Doe 2 without any clothes, unconscious, and her

27   legs duct-taped together. Ms. Kormes escaped the home with Jane Doe 2 and the other children,

28   and police were eventually called.   On July 11, 2012, officers responded to the defendant's

7

1    home, searched the residence, and discovered Jane Doe 1 was dead in the laundry room under
2    a blanket.  Jane Doe 1 was cold to the touch, and she was pronounced dead on the scene at
3    10:23pm on July 11, 2012.

4         After Ms. Kormes escaped the home but prior to officers responding, Ms. Kormes took
5    Jane Doe 2 to the local hospital, where she was taken to Sunrise Medical Center in Las Vegas.
6    Thereafter, doctors transferred Jane Doe 2 to Phoenix Children's Hospital where she underwent
7    intensive rehabilitation for two weeks.

8         While Jane Doe 1 was dying or dead, and Jane Doe 2 was unconscious, the defendant
9    wrote apology letters saying he was sorry for what he had done.  He also alleged that he tried
10   to overdose on pills to commit suicide because he killed Jane Doe 1 and seriously injured Jane
11   Doe 2, and knew what he did was wrong.  He explained he was under stress because Ms.
12   Kormes, who was pregnant with his child, would not get out of bed and he was taking care of
13   everything, including the children.

14        The medical examiner ruled that the cause of Jane Doe 1's death as homicide and the
15   manner of death was suffocation, but the other injuries Jane Doe 1 sustained could also have
16   killed her, including multiple blunt force traumas, lacerated liver, and hemorrhages. The medical
17   examiner noted 45 external injuries to Jane Doe 1, including trauma to the inside of her mouth
18   consistent with suffocation (injury to gums area above upper teeth), subdural hemorrhages,
19   hemorrhage to pericardial sac, subgaleal hemorrhages on her head, rib fractures, and deep
20   muscle hemorrhages (rare, down to the bone) consistent with hard blunt force trauma.  She also
21   suffered a lacerated liver, hemorrhages around the right adrenal gland (covered by the liver)
22   consistent with a solid punch or being stomped on, and her fingers were mummified, which
23   means she had been dead for a period of time prior to being found on July 11, 2012. An analysis
24   of her fingernail clippings revealed the defendant's DNA underneath her fingernails.

25        The defendant never got Jane Doe 2 medical treatment.  Jane Doe 2's injuries from the
26   abuse included the following:  traumatic brain injury (significant damage to the brain), strokes
27   and swelling to the brain on top of injuries; seizures; cornea injuries; major cognitive deficits and
28   physical limitations; arm fractures (required surgery and pins, and her arms were in splints for

1    a while); could not swallow and would not accept food except through a tube; could not speak

2    except to imitate a few words like "hi"; and nerve injury. Jane Doe 2 is currently in foster care

3    for special needs children, and is unlikely to ever be able to live on her own.

4         While at the scene on July 11, 2012, an officer noticed that one of the defendant's

5    younger children, John Doe 1, age four, was near the scene and had a visibly distorted arm. The

6    investigation regarding John Doe 1 revealed the following: on or between July 8, 2012 and July

7    11, 2012, the defendant got angry with John Doe 1 and made him go into the bathroom with Jane

8    Doe 2 before he locked her and left her in the bathroom. The defendant bent John Doe 1's right

9    arm, resulting in a broken arm, punched him in the forehead, smacked him on the left arm

10   causing bruises, and twisted his right leg, leaving bruises.

11        The defendant has descendant status, meaning he has Indian blood, and his Fort Mojave

12   Indian blood quantum is calculated at 3/16. His mother Teresa Bryan is a member of the Fort

13   Mojave Indian Tribe, which is a federally recognized tribe, and her Fort Mojave Indian blood

14   quantum is 3/8. The defendant is further recognized as an Indian by the Fort Mojave tribal

15   government, where he has received substantial benefits like medical care, dental care, behavioral

16   health, tutoring, and housing through the tribe; participated in cultural events important to the

17   tribe like serving as a "Spirit Runner," an honor restricted to Indians; attended traditional

18   cremation ceremonies usually restricted to Indians; attended and participated in Indian Days and

19   played the sport of shinny, a tribal game; served as an Explorer for the Fort Mojave Tribal Police

20   Department; and participated in the Fort Mojave Recreation Program playing various organized

21   sports for tribal members only. The defendant was recognized as an Indian by the Fort Mojave

22   Indian Tribe on the day of the offense.

23        The defendant shall swear under oath to the accuracy of this statement and, if the

24   defendant should be called upon to testify about this matter in the future, any intentional material

25   inconsistencies in the defendant's testimony may subject the defendant to additional penalties

26   for perjury or false swearing, which may be enforced by the United States under this agreement.

27

28

9

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

1   I further agree that promises, including any predictions as to the Sentencing Guideline

2   range or to any Sentencing Guideline factors that will apply, made by anyone (including my

3   attorney) that are not contained within this written plea agreement, are null and void and have

4   no force and effect.

5   I am satisfied that my defense attorney has represented me in a competent manner.

6   I fully understand the terms and conditions of this plea agreement.  I am not now using

7   or under the influence of any drug, medication, liquor, or other intoxicant or depressant that

8   would impair my ability to fully understand the terms and conditions of this plea agreement.

9

10   __8/15/13__                               _____
     Date                                     MATTHEW LEE SMITH
11                                            Defendant

12                         **APPROVAL OF DEFENSE COUNSEL**

13   I have discussed this case and the plea agreement with my client in detail and have

14   advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional

15   and other rights of an accused, the factual basis for and the nature of the offense to which the

16   guilty plea will be entered, possible defenses, and the consequences of the guilty plea including

17   the maximum statutory sentence possible.  I have further discussed the concept of the advisory

18   Sentencing Guidelines with the defendant.  No assurances, promises, or representations have

19   been given to me or to the defendant by the United States or any of its representatives that are

20   not contained in this written agreement.  I concur in the entry of the plea as indicated above and

21   that the terms and conditions set forth in this agreement are in the best interests of my client.  I

22   agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all

23   the requirements of Fed. R. Crim. P. 11.

24

25   __8/15/13__                               _____
     Date                                     JANE L. MCCLELLAN
26                                            JON M. SANDS
27                                            Attorneys for Defendant

28

                                    11

**APPROVAL OF THE UNITED STATES**

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

JOHN S. LEONARDO
United States Attorney
District of Arizona

August 15, 2013
Date

JENNIFER E. GREEN
SHARON K. SEXTON
DYANNE C. GREER
Assistant U.S. Attorneys

**ACCEPTANCE BY THE COURT**

Date

THE HONORABLE PAUL G. ROSENBLATT
United States District Judge

12